FILED
2015 Mar-02  PM 02:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| KIMBERLY PRUITT MCCORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:13-CV-1863-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Kimberly P. McCord, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. McCord timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. McCord was forty-three years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has at least a high school education. (Tr. at 12.) Her past work experiences include employment as a receiving manager, automotive technician, and department manager. (Tr. at 207.) Ms. McCord claims that she became disabled on May 5, 2010, due to a back injury, arthritis, depression, anxiety,

hypoglycemia, migraine headaches, and degenerative disc disease with three back surgeries. (Doc. 10 at 2.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The decision depends on the medical evidence contained in the record.  *See Hart v. Finch*, 440 F.2d

1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC,

age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.; see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Ms. McCord meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 11.) He further determined that Ms. McCord has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.*) According to the ALJ, Plaintiff's spondylosis and degenerative disc disease, status post lumbosacral laminectomy at L4-L5 are "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ did not find Ms. McCord's allegations to be fully credible, and he determined that she has the following RFC: to lift 20 pounds occasionally and 10 pounds frequently; stand two hours in an 8-hour day; walk two hours in an 8-hour day; sit six hours in an 8-hour day; is unlimited with

respect to pushing and pulling; should not climb ladders, ropes or scaffolds; can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, and crouch, but never crawl; has no manipulative, visual or communicative limitations; should avoid concentrated exposure extreme cold and extreme heat and vibration; is unlimited with respect to exposure to wetness, humidity, noise, fumes, odors, dust, gases, etc.; and she should avoid exposure to hazards (machinery, heights, etc.). (Tr. at 12.)

According to the ALJ, Ms. McCord is unable to perform any of her past relevant work, she is a "younger individual aged 18-49," and she has at least a high school education and is able to communicate in English. (Tr. at 14-15.)   He determined that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable skills. (Tr. at 15.)  Because there are additional limitations in Plaintiff's ability to perform all or substantially all of the requirements of "light work," the ALJ asked the Vocational Expert ("VE") if there are jobs that exist in the national economy for an individual with her age, education, work experience, and RFC. The VE testified that there are a significant number of jobs in the national economy that she is capable of performing,

such as sorter/clerical, food checker, and telephone solicitor. (*Id.*) Pursuant to Social Security Ruling ("SSR") 00-04p, the ALJ found that this testimony was consistent with information contained in the Dictionary of Occupational Titles. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from July 1, 2010, through the date of this decision." (Tr. at 16.)

II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th

Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

" The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.' " *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for " despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.  Discussion

Ms. McCord alleges that the ALJ's decision should be reversed and remanded

for two reasons. First, Ms. McCord argues that the ALJ gave improper weight to the various medical opinions of record. (Doc. 9 at 13.) Second, Plaintiff takes issue with the fact that the ALJ did not pose any hypotheticals to the VE in which there was a sit/stand option. (*Id.* at 14.)

A.    Weight Given to Medical Opinions of Record

Plaintiff contends that the ALJ improperly evaluated the opinion of Dr. Duryea, her treating physician, as well as the opinion of Dr. Brovender, the non-examining medical expert who testified at Plaintiff's hearing.

1.    Treating Physician, Dr. Duryea

Plaintiff began seeing Dr. Duryea in 2006 for manipulation and pain management treatment for back and leg pain.  (Tr. at 342-480.)  Plaintiff had been diagnosed in 2004 with a herniated lumbar disc with radiculopathy, sciatica and low back pain.  (Tr. at 270-98.)   In February 2004 she underwent a left lumbar hemilaminectomy, partial fascetectomy, and decompressive diskectomy, and in 2005 she had a second laminectomy.  (Tr. at 270-98, 502-08.)  Dr. Duryea listed Plaintiff's diagnoses as post laminectomy lumbar syndrome, lumbar neuritis L4/5, and chronic pain syndrome. (Tr. at 485.) Dr. Duryea also completed an RFC evaluation form in which she stated that Plaintiff can lift objects no greater than 10 pounds; climb no

ladders; perform no overhead work; perform no repetitive bending, squatting, crawling; sit no longer than 30 minutes; stand no longer than 30 minutes; and walk no longer than 30 minutes. (Tr. at 483.) Furthermore, Dr. Duryea stated that Plaintiff became permanently disabled after she fell off of a ladder in May 2010 and would be unable to participate in any substantial gainful activity either in her previous occupation or any other substantial gainful activity. (*Id.*) It was Dr. Dureya's opinion that Plaintiff would miss 25-30 days of work per year from her conditions. (*Id.*)

The ALJ gave Dr. Duryea's opinion in the RFC evaluation "some" weight. (Tr. at 14.) The ALJ stated in support of his decision that the record does not support a finding that Plaintiff's ability to exert herself physically is seriously reduced such that she could not engage in work activity. (*Id.*)

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). However, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when: "(1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was

conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)(citing Lewis, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record); 20 C.F.R. § 404.1527(c).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors " are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's " condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative. It is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Here, the ALJ had good cause to discount Dr. Duryea's opinion. First, Dr. Duryea's opinion is not tied to any objective or clinical findings. (*See* tr. at 483-84).

*See* 20 C.F.R. § 404.1527(c)(3); *Crawford*, 363 F.3d at 1159-60. Though Dr. Duryea listed Plaintiff's diagnoses (tr. at 483), diagnoses alone do not reveal the extent to which the condition limits a claimant's ability to work. *See Moore*, 405 F.3d at 1213 n.6 ("the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"). Similarly, Dr. Duryea's opinion that Plaintiff is "permanently disabled" is not entitled to any deference either by the ALJ or by this Court, as such opinions are within the sole province of the ALJ.

Second, Dr. Duryea's treatment notes fail to support her opinion that Plaintiff was permanently disabled. For instance, in July 2010, Dr. Duryea noted that Plaintiff had normal movement in all extremities, although she exhibited a stooped gait. (Tr. at 365.) In September and December 2010, Dr. Duryea noted that Plaintiff presented with chronic pain, but the examination notes show nothing out of the ordinary. (Tr. at 360.) These notes also indicated that Plaintiff was taking the medications prescribed for pain and was stating that they were effective. (Tr. at 357-362.) Although Plaintiff was ordered to physical therapy by Dr. Duryea in January 2011 (tr. at 356), Plaintiff only went to one treatment, even though she did indicate that the treatment gave her some relief. (Tr. at 501.) In February 2011, Dr. Duryea noted that Plaintiff

exhibited left sacroiliac joint tenderness on palpation, and her pelvis appeared normal. (Tr. at 352.) In May 2011, Plaintiff exhibited normal gait, stance, and movements of all extremities. (Tr. at 346.) As such, Dr. Duryea's treatment records and notes from examinations do not provide evidence that would reasonably support a finding that Plaintiff is as physically limited as Dr. Duryea found.

Importantly as well, Dr. Duryea's opinion is inconsistent with the other evidence in the record from numerous physicians. Neurologist Martin Jones, M.D., evaluated Plaintiff in June 2010 after her fall the previous month. (Tr. at 513.) During this examination, Dr. Jones noted that although Plaintiff's range of motion of her lumber spine was "probably 50% of the normal range," she otherwise had "equivocal" leg raises, 5 out of 5 muscle strength, and intact sensation. (Tr. at 514.) Dr. Henry Born examined Plaintiff in October 2010 and stated Plaintiff's muscle strength in the upper and lower extremities was intact, without any atrophy. (Tr. at 314.) Her cranial nerves were intact, but she had a slow gait. (*Id.*) A State agency medical consultant, Dr. Richard Whitney, reviewed the evidence of record in October 2010 and stated that Plaintiff could lift 20 pounds occasionally; frequently lift and/or carry 10 pounds; stand and/or walk with normal breaks for a total of 6 hours in an 8-hour workday; sit with normal breaks for a total of about 6 hours in an 8-hour work day; push and/or

pull an unlimited amount, other than as shown for lift and/or carry. (Tr. at 335.) Dr. Whitney stated that Plaintiff could occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; and frequently stoop, kneel, crouch, and crawl. (Tr. at 336.) He found no manipulative, visual, or communicative limitations of Plaintiff as caused by her ailments. (Tr. at 337.) Dr. Whitney also found that Plaintiff should avoid concentrated exposure to extreme cold and heat. (Tr. at 338.) Finally, Dr. Whitney stated that " [t]he claimant's statements can be considered partially credible as the [medical evidence of record] does not support the severity of her allegations." (Tr. at 339.)  State agency medical experts and consultants are " highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). The regulations require the ALJ to consider the opinions of these non-examining physicians. (*Id.*)  " In appropriate circumstances, opinions [from non-examining physicians] may be entitled to greater weight than the opinions of treating or examining sources. S.S.R. 96-6p, 61 Fed. Reg. 34,466 at 34,468 (1996).  In sum, these treating and consulting physicians did not find limitations as disabling as Dr. Duryea did.

Additionally, and as the ALJ noted, Plaintiff's treatment for her reports of back and leg pain were conservative in nature. (Tr. at 13). *See* 20 C.F.R. § 404.1527(c)(3);

*Peters v. Astrue*, 232 F. App'x 866, 871 (11th Cir. 2007) (noting claimant's conservative treatment supports ALJ's decision to discount treating physicians' opinions). Dr. Duryea prescribed medications that were frequently noted to be effective. (Tr. at 13, 344, 347, 357, 360, 363.) A January 2011 physical therapy note indicated Plaintiff showed " good rehabilitation potential." (Tr. at 13, 501.) Dr. Jones stated that Plaintiff was treated with epidural blocks, and that Plaintiff had improved significantly. (Tr. at 13, 511.) Given the foregoing, there was good cause to not give substantial weight to the opinion of Dr. Duryea.

2.    Dr. Brovender

Dr. Brovender, a practicing board certified orthopedic surgeon and also a professor at Yale University and Albert Einstein College of Medicine, appeared and testified at Plaintiff's hearing as a medical expert. After reviewing the objective medical evidence, Dr. Brovender agreed that Plaintiff had moderate to severe spondylosis and degenerative disc disease. He concluded that Plaintiff could stand for two hours in an eight-hour workday; walk for two hours in an eight-hour work day; and sit for six hours in an eight-hour workday. (Tr. at 27-28.) Furthermore, Dr. Brovender found that there were no pushing or pulling limitations; she could never climb ladders, ropes, or scaffolds; and she could occasionally climb ramps and stairs,

kneel, stoop, and crouch; and never crawl. (Tr. at 28.) He strongly disagreed with Dr. Duryea's opinion that Plaintiff could not sit or stand for longer than 30 minutes. (*Id.*)

The ALJ assigned substantial weight to Dr. Brovender's opinion.  The ALJ articulated the following considerations in determining the degree of weight to afford Dr. Brovender's opinion: 1) Dr. Brovender is a board certified orthopedic surgeon and 2) his opinion and testimony was based on his careful review of the objective medical evidence. (Tr. at 14.)

To determine the weight given to a medical opinion, an ALJ must consider several factors, including the examining relationship, the treatment relationship, the evidence presented to support the opinion, the consistency of the opinion with other evidence, and the specialization of the medical professional. 20 C.F.R. § 404.1527(c). As previously noted, state agency medical experts and consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation," 20 C.F.R. §404.1527(e)(2)(I), and the regulations require the ALJ to consider the opinions of these non-examining physicians. (*Id.*)

Plaintiff appears to argue that Dr. Brovender's opinion alone does not constitute substantial evidence upon which to base an RFC determination.  However,

the ALJ did not rely solely on Dr. Brovender's testimony: he derived the RFC by according substantial weight to Dr. Brovender's opinion and significant weight to the opinions of the State agency medical consultants, Dr. Whitney and Dr. Estock. (Tr. at 14, 320, 335-41).  The ALJ also considered Dr. Duryea's opinion but afforded it only some weight, as discussed in the previous section.  (Tr. at 14, 483.)  The ALJ also took into account the progress notes of Dr. Duryea and the examination reports of Drs. Born and Jones.  (Tr. at 12-13, 312-15, 344-65, 488-99, 511-14.)  For these reasons, the Court is of the opinion that the record supports the ALJ's decision to give substantial weight to the opinion of Dr. Brovender.

### B. Sufficiency of Hypothetical Question Posed to the VE

Plaintiff also argues that the ALJ should have asked the VE whether Plaintiff needed a sit/stand option.  " In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)). The ALJ's hypothetical, however, need not reference symptoms that the claimant " alleged to suffer but were either not supported by her medical records or were alleviated by medication." *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1270

(11th Cir. 2007).

Plaintiff's argument is based on her own testimony that she needed a sit/stand option as well as the opinion of treating physician Dr. Duryea, who opined in February 2012 that Plaintiff could stand and sit for no more than thirty minutes. However, as discussed above, Dr. Duryea's opinion is not supported by the record and was appropriately given only some weight by the ALJ.

Moreover, Plaintiff's statements about her pain and other symptoms, alone, are insufficient to establish disability. *See* 42 U.S.C. §423(d)(5)(A); 20 C.F.R. §404.1529(a), (c). In order to establish disability through subjective complaints of pain or other symptoms, Plaintiff must show: (1) evidence of an underlying medical condition; and (2) either the medical evidence substantiates the severity of the pain from the condition or the condition is sufficiently severe that it would be reasonably expected to produce the alleged pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If there is a determinable medical condition that could reasonably cause pain and other symptoms, the ALJ evaluates the alleged intensity and persistence of the symptoms based on all of the record of evidence. *See* 20 C.F.R. §404.1529(b), (c); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be

disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

Here, the ALJ determined Plaintiff's subjective complaints of disabling symptoms were not credible in light of all of the evidence in the record. (Tr. at 14.) Substantial evidence supports the ALJ's decision on this issue. First, Plaintiff's subjective, self-reported limitations are not consistent with the medical evidence that was discussed above. (Tr. at 51-62, 223-24.) At the hearing, Plaintiff testified she could not sit comfortably, and she requested to stand up and walk around. (Tr. at 40, 52). She also testified that she dealt with her pain since 2000, but her pain intensified after she fell from a ladder in May 2010. (Tr. at 53-54). Despite her testimony, the October 2010 examination report of Dr. Born indicated Plaintiff had normal range of motion at the hips, knees, ankles and feet. (Tr. at 314.) Dr. Born noted Plaintiff moved fairly well at the hips, but it aggravated her back problem. (Tr. at 314.) She also had a slow gait. (*Id.*) Additionally, several of Dr. Duryea's progress notes contained unremarkable physical examination findings. (Tr. at 346, 348-49, 352, 358-59, 361, 365, 491, 498.) Additionally, Dr. Jones noted that despite some tenderness, Plaintiff exhibited 5/5 motor strength in the lower extremities, intact sensation, and normal deep tendon reflexes. (Tr. at 12, 513-14.)

Furthermore, the Plaintiff's own statements have made her claims of pain not as credible.  For instance, Dr. Jones noted during his examination of Plaintiff after her fall that she stated that she wanted to wait until after hunting season to possibly do anything surgically related. (Tr. at 512.) The ALJ took this to mean that she was still hunting at the time, which would suggest that Plaintiff was not so disabled as she claims. (Tr. at 14.)  After this statement, Dr. Jones concluded that "he did not think there was anything else to do and he would see her on an as-needed basis." (Tr. at 514.)

In discrediting Plaintiff's subjective testimony of pain, the ALJ also considered the nature and effectiveness of Plaintiff's treatment. (Tr. at 13). *See* 20 C.F.R. § 416.929(c)(3)(iv)-(vi). As noted, Dr. Duryea's treatment notes indicate that Plaintiff took medications for her pain, and the treatment was effective. (Tr. at 13, 357, 489, 496). *See Wolfe*, 86 F.3d at 1078 (conservative treatment did not support claimant's subjective complaints). Additionally, according to Dr. Jones's September 2010 progress note, Plaintiff reported the epidural blocks "usually work." (Tr. at 13, 511). Dr. Jones stated Plaintiff had improved significantly. (Tr. at 13, 511.)

Finally, Plaintiff's activities of daily living do not entirely support her subjective complaints.  (Tr. at 13). *See* 20 C.F.R. § 404.1529(c)(3)(i) (the Commissioner will

consider claimant's daily activities when evaluating claimant's symptoms). While the ability to engage in daily living activities does not disqualify a claimant from receiving disability benefits, the Commissioner may properly consider a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. *See Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 663 (11th Cir. 2010) (citations omitted). Plaintiff reported in her September 2010 function report that she prepared meals for her husband, made the beds, washed the dishes, performed laundry, and shopped for groceries and clothing. (Tr. at 13, 200-02). She also reported she would read and watch television for seven to eight hours a day, but then noted that she could not sit for more than an hour. (Tr. at 13, 203.) Plaintiff stated she called her parents and children three times a week and attended church once a week. (Tr. at 203).

In sum, the ALJ properly found Plaintiff's subjective complaints regarding her limitations were not entirely credible. The law only requires the ALJ to include in the hypothetical question limitations that are supported by the evidence. *See Crawford*, 363 F.3d at 1161. Thus, the record does not support a finding that the Plaintiff's ability to exert herself physically is seriously reduced such that she could not engage in work activity, and the Plaintiff's argument that the ALJ should have incorporated the

sit/stand option into the hypothetical question is without merit. Plaintiff failed to prove that she could not perform the jobs cited by the VE or the ALJ. *See Doughty*, 245 F.3d at 1278 n.2 (to be considered disabled, claimant must prove he is unable to perform the jobs listed by the Commissioner).

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. McCord's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 2nd day of March 2015.

L. Scott Coogler
United States District Judge
[160704]

.